235226 Valentine Express Corp v. EAN Holdings LLC. Arguments not to exceed 15 minutes per side. Mr. Bufkin for appellant. Good morning, your honors. May it please the court, Gary Bufkin on behalf of plaintiff appellant Valentine Express Corp and I have reserved three minutes for rebuttal. This is a contract dispute over insurance coverage and under Tennessee law we believe it should have been resolved as a matter of law. The enterprise contract gave Valentine two options for insurance. Get your insurance on your own or by business liability protection from us. Valentine testified by affidavit that he understood that enterprises BTI coverage provided an amount of coverage that satisfied what was required for a commercial truck in Tennessee law. And this was consistent with enterprises own internal memorandum that they used to train their employees called the BTI memo which said BTI is a liability protection up to the minimum limits required by the state. So Valentine bought the BTI coverage. Enterprise argues in its brief that Valentine elected... What did you pay? What were your premiums on this purchase? It was... The records show on that. It shows it was dollars per day, excuse me, dollars per day I believe. But it is really not relevant because... I am just curious, how much did you pay on this? I think it was four or five dollars a day. I don't recall to be honest. Throughout the period. It was by the day? Throughout the period. Throughout the period. It was about a week or so was the rental. These are short term rentals. So they come and go very quickly. And Mr. Valentine was renting different vehicles each week. And so the bills that he was receiving were changing rapidly. Enterprise when it wrote the insurance for Valentine used a form contract. They filled it in. They put BTI in the blank. And they used a signature on file for Valentine. So Valentine never sees this contract. The amount of coverage is not stated in the contract because Enterprise defines that amount of coverage in its insurance policy, the ACE policy. It is defined for Enterprise but it is not defined for Valentine. And the way it is defined is the amount required to satisfy state law. The minimum limits required in the state of Tennessee. Valentine's driver has an accident and he files a claim and he is expecting $750,000 which is what is required. Which entity does state law regulate on that Well the state regulates the motor carrier and we are not saying that Enterprise has a statutory duty. We are saying that Enterprise entered into a contract that said we are going to provide you this coverage. And the way they provided the coverage was that they purchased this ACE policy and made Valentine an additional insured. And in that policy Enterprise admits they defined their BTI coverage obligation to Valentine as the amount required by the state of Tennessee. The minimum limit required. So the coverage is declined. Enterprise denies it even has a policy. We ask for the policy and for three years they won't produce it. And the reason they won't produce it is because they didn't comply with their own definition of coverage. They didn't provide the minimum limits required by the state. So the case is not about what Enterprise actually wrote in the contract. The case is about what Enterprise's documents, the written contract actually promised Valentine. Tennessee interprets insurance contracts as a matter of law. An undefined term under Tennessee law does not create ambiguity. And that's because the courts are required to look at the contract and its terms. And then apply the rules of contract construction. They must resolve any ambiguity in an insurance contract against the insurer. And if you get to extrinsic evidence, which we shouldn't have in this case in our opinion, Tennessee follows somewhat of a bifurcated or hybrid approach between textualism and contextualism. But we don't get there. Because the contract on its face references the BTI liability protection that Enterprise was selling. It references the ACE policy is the BTI liability protection referenced in the contract. So these two documents work together. Who are the parties to the ACE policy? The parties to the ACE policy were Enterprise and ACE American Insurance Company. And the way that Enterprise set this up is they wanted to be an insurer, but they didn't want to have the duty to defend under Tennessee law. So they went to ACE and they bought an excess insurance policy. Why wasn't the district court right in saying that the request to use the ACE policy is just disconnected from the master agreement? Because Enterprise uses the ACE policy to define its coverage obligation. Is Valentine Express a party to that? Valentine Express is an additional insured under the ACE policy. And Enterprise admitted it defines its obligation to Valentine in the ACE policy. And under Tennessee law, if you have a reference contract in a contract, then they can be construed together as a matter of law. And that's because the Tennessee courts require that all of the terms of the contract be construed. And that includes a term that they chose to define outside of the four corners of the contract in their insurance policy that actually provided the coverage for the contract. Well, it is and it isn't, because under Tennessee law, the court can still construe a separate written document if it's referenced, essentially integrated into the contract, it can construe that as a matter of law regardless. Is there a language that does that? It says BTI liability protection. Without a number? Without a number anywhere, Your Honor. There's no number anywhere until you get to the ACE policy. Enterprise didn't want to be tied to multiple contracts. They wanted to have one contract and so they drafted it flexibly. They could have put a number in the policy they wrote to us, the contract, but they didn't because they wanted to use it for multiple vehicles, multiple types of insurance. And so instead of a number, they tie it to the minimum limits required by state. So they use it all over for all types of vehicles and that's why there's no number in there. So all we have to do as a matter of law is look to the minimum limits of coverage. And Tennessee gives you two choices. It gives you the minimum limits required for a commercial truck or a car. It's $750,000 or $25,000. That's really the sole question that was before the district court is which minimum limits apply? What were you seeking, damages or a declaratory judgment? It kind of evolved over time. It started as a declaratory judgment action. Why that if you won all this money? It started as a declaratory judgment action to define that Enterprise actually owed the $750,000. I was not counsel at the time. I appeared about three weeks before trial. A declaratory judgment for damages? It was a declaratory judgment action. The complaint was amended and became a breach of contract action, in our opinion. The court disagreed and allowed the declaratory issue to be tried, but not the breach of contract claims to be tried. Finding that it was at the eve of trial? Wasn't it within the court's discretion to determine that the governing complaint that requested declaratory relief, not damages? Couldn't it be amended to request new relief and different relief in damages so near the trial? I think it is within the court's discretion, but the timing is problematic. We had discussed and briefed breach of contract and failure to procure insurance coverage for a long period of time in this case. Then we get to the eve of trial. The pre-trial conference is held. The pre-trial order has been submitted to the court. That's when everything changes. The claims change back to just declaratory. The pre-trial conference is how far away from the trial? I believe it was about three weeks before trial. Isn't it within the trial court's capacity to say, we can't get off the road we're on, we can't amend and treat this as a breach of contract? When it has been litigated through the declaratory judgment request? Yes, Your Honor, but I think it's the opposite. We had raised, in our opinion, breach of contract claims in the amended complaint a year or a year and a half earlier. It was the district court who was saying, no, let's not do that, even though we've been briefing that issue and arguing about that for a year. Let's go back and just try the declaratory issue. It was really the timing of that shift that caused the motion for continuance. Which came to a head at the pre-trial conference? After the pre-trial conference, actually. It wasn't until we showed up for trial that we actually understood what claims were being tried. But to be clear, you haven't challenged here the district court's decision to disallow the amendment? Well, we have challenged the district court's denial of our ability to try the breach of contract and, more importantly, the failure to procure claim. How can we even get to that if the operative complaint didn't include that claim? Well, we believe it did. We've set forth in our brief that it said breach of contract and failure to procure many, many times throughout our amended complaint. So there's a dispute between the parties over that. Did you change your request for relief? I don't know what exactly the court means by that. I know that we stated in the brief in a way that we believe is sufficient in Rule 8 to put everyone on notice of these claims. And we discussed the $750,000 expressly. You can have a breach of contract allegations and still just request declaratory relief, can't you? I believe that's true. And that's just not the way that we interpreted it. It's not the central issue on appeal for us. It was just an issue that changed at the 11th hour along with the key piece of evidence, the ACE policy. All of these things were in the pre-trial order. They had been discussed at the pre-trial conference. And then within a day or two of trial, it all changed. And so that was the basis for the appeal issue related to the pre-trial order. The district court also erred, we believe, by excluding the ACE policy at trial. Again, we've kind of covered this with the ACE policy, but Enterprise admits this is how it defines a term in its contract. They mention it 53 times, I believe, before the summary judgment. It expressly contemplates a $750,000 obligation, which they deny they have, but it's expressed in the ACE policy. So it was in the pre-trial order. It was listed by them. It was listed by us. So we believe it was unfair to exclude that. I think your red light is on. So you'll get your full rebuttal. Thanks very much. Good morning. Good morning, Your Honors. I'm here from Baker Sturkey and am representing EAN Holding. You'll hear me reference them as Enterprise throughout because that's how I know. I think I'd like to jump in first kind of on the discussion that y'all were just having about the continuance. I think that in this case, you'll note that there was a judgment on the pleadings. The court looked at the judgment on the pleadings and really defined the issue that was going to control this case, which was whether or not the parties in the contract between the two parties had actually defined how much insurance Enterprise had agreed to pay. In that pleading, they found that the breach of contract claim had not actually asserted any additional monetary damages and was not going to be an issue in the case. And so, Judge Stranz, I think that you're right and you're on the right path as far as that this was simply not an issue in the case. This is something that my friend on the other side should have understood when he started the case. This should not have come as a surprise to him when he went to go and try to introduce a breach of contract claim in the weeks leading up to trial. He says that the amended complaint covered the breach of contract. Why doesn't it? The reason it doesn't is because it doesn't change the relief that they required or the relief that they asked for. At the end of the day, that first amended petition was a petition for declaratory judgment. And so there was no substantive change as far as the relief that was sought or the claims that were sought. And so I think that the district court properly found when they looked at it that because there had been no change to the relief requested, that what was really being sought was a declaration as to what the contract between the parties required of EAN as far as providing coverage to Ballantyne. And so you don't think that as you litigated through discovery that the general rule that the pleadings are conformed to the evidence and the presentation of proof matters here? I don't think it matters in this particular case because, again, when you look at the two claims that are being sought, the declaratory judgment action encompasses all of the same evidence, all of the same arguments, right? It's, you know, what they're asking is for a declaration of what EAN and enterprises obligations were under that master agreement. And if the court had entered a declaratory judgment that what those documents shows is that you owe someone damages for a breach of contract, would that not have led you back to the spot that the enforcement of that would be appropriate in requesting damages? Typically speaking, that would be true, that at the close of a declaratory judgment action, if there is a ruling that, you know, one party owes the other party an obligation under a contract that includes, you know... Includes the ability to enforce it. Right, exactly. And so why couldn't that have been the case here? Well, I think that had the jury believed Mr. Ballantyne that $750,000 were offered, that's the result that would have happened. I mean, I think that the reason we didn't get there is because the jury didn't believe Mr. Ballantyne and found that $750,000 was not required under the contract. Again, I think that had at the end of the case the jury found for Ballantyne and found that $750,000, they would have had the opportunity of moving to enforce that judgment. So again, I don't think there's anything in that motion for continuance that required the court... The simple, you know, denial of pretrial motions, if that were to allow a continuance each time, even where a ruling is unexpected or goes to, you know, what they believe is the core of their case, I think that, you know, courts would not have the opportunity of trying very many cases in a timely manner. And so I just think that... What about the distinction between the request to put the ACE policy in as governing the relationship between the parties, which was denied, while admitting the policy that your client requested be included in the record, which was the shelter policy? Yeah, I think there's actually a significant distinction between the two policies and how they were being used by the parties. When you look at the ACE policy, Mr. Ballantyne wanted that in front of the jury in order for the jury to interpret the terms of the policy. So they were trying to get into the notice provision and other provisions in the policy to determine what that retained limit is that, you know, would then somehow define, presumably, how much insurance they had agreed to provide in the master contract. I think that that fairly reflects Mr. Ballantyne's argument. But you can't get to that place without a contract interpretation of the ACE policy. The, you know, interpretation of that ACE policy was never requested in the declaratory judgment action, which is why the district court refused to do it. It's why the district court refused to do it during summary judgment motions. In stark contrast to that, the shelter policy that we actually admitted, we admitted it just as a course of that policy had been procured, right? It was the fact and the matter that there was an insurance contract that was being admitted and used in front of the jury. And the reason for that is because, you know, it showed a couple of things for us. Mr. Ballantyne, when he went in to rent the trucks that he rented from Enterprise, the master agreement required one of two things. Either he had to purchase 100-300 split limit policy from Enterprise itself, or they could satisfy that insurance obligation by going to another carrier. Okay? When he first came in, he had produced a certificate of insurance for the shelter policy. And so it shows that he understood the insurance that he needed to have. He had secured that shelter insurance and was compliant under the master agreement. At the 90-day review is when they determined that that certificate of insurance did not cover the truck that was being insured. At that point is when, in order for Mr. Ballantyne to maintain the premium rates that he was getting for rental of the truck, he had to then switch to getting the BTI through Enterprise because it wasn't being covered. That 100-300 split was no longer being covered by shelter insurance. And so... It was $3.55 a day premiums for our policy versus $17 a day for the shelter policy, which was $1 million. And so the premium of $3.55 a day is really commensurate with the 100-300 split of coverage. That we always intended to apply. Does the record bolster that last point? It does. There was testimony and I believe it was also in the summary judgment motions. But those exact numbers were out there. That's the standard premium for that 100-300. Again, that was another thing that the shelter policy showed for us. For us, we weren't asking the jury to delve into that policy and to interpret anything about the policy. We weren't asking the district court to interpret anything about the shelter policy. And so that's a real distinction as far as how these different policies were going to be used and what kind of evidence was going to be able to come in. For Mr. Ballantyne to introduce that ACE policy and particularly getting into what the notice provisions meant, what the definition of the retained limit was, those kinds of things. He needed a declaration as to what that shelter policy could be interpreted as. He needed the district court to actually interpret it because the jury simply didn't have the expertise or the knowledge to try and do that kind of contract interpretation right there from the jury box. But in this instance, that just wasn't in the declaratory judgment action. Also, ACE was not a party to this litigation. And so what he was asking was that the district court interpret the meaning and the obligations and rights of the parties under that ACE policy without having the insurer in the litigation to defend its position as to what its policy would have required. And so here, they would have made a fundamental shift in the way that ACE and Enterprise actually viewed that policy had they gone with the interpretation that Mr. Ballantyne asked for. There's a key piece to remember about that ACE policy. The ACE policy provides access coverage to Enterprise and what it does is it's covering the difference between the retained limit that Enterprise had, which was the state minimum that both ACE and Enterprise understood to be $25,050. And the policy covered the difference between their stated limit, so that $100,000, the difference between that and the retained limit of $25,000. So in an accident that exceeded $100,000, the Enterprise company would pay the first $25,000. The ACE policy would pay $75,000. If Mr. Ballantyne is correct and we agreed to pay $250,000, there would be no coverage under that ACE policy because the retained limit, if the retained limit is $750,000, then there is no difference between that, I mean it's sort of the opposite of difference because it's going above, that $100,000 and so you can't subtract out the $750,000 from $100,000 and get anything. So under that particular interpretation, the contract would have been voided not only for the policy issued in this case, but for all of the policies that were issued that were below $750,000, which included the $250,000 and the $500,000 policies that ACE and Enterprise regularly contracted for. I think we understand your argument. Thank you very much. Enterprise has lots of reasons why it didn't write the correct amount of coverage. None of those come in under Tennessee law. Tennessee law looks at the contract itself and there's really nothing in dispute. It comes down to which minimum limits apply and the minimum limits for the commercial truck that's actually rented and insured under the contract or the minimum limits for cars and noncommercial vehicles. That's really the only issue that was left. Why does it make a lot of sense that it was $350,000 a day and that correlates more with their interpretation? That's a great question. The reason there's a distinct difference is that the insurance policy that Shelter wrote had all sorts of coverage items that the Enterprise policy didn't. It had comp collision, it had uninsured motors, it had a number of other provisions that the Enterprise policy didn't cover. So there is a distinction and that's one of the reasons we felt like it was not an apples to apples comparison for them to hold up the numbers and say, look at the difference here, he should have known. Well, he didn't know because they didn't give him a copy of the policy and they didn't give him a copy of the contract. They used his signature on file to apply the coverage. They say he elected the coverage but later in the record they say it was forced placed. There's no provision in the contract that allows them to force place insurance and if they did without a right to do so, then they assume the duty to force place the correct amount of insurance. The ACE policy at trial, Enterprise relied on it in their testimony with their corporate witness. We went up to the bench with the court and raised that issue and said they've opened the door. The judge acknowledged that the witness had been testifying about the ACE policy without objection but then decided that it would confuse the jury. We were offering the ACE policy because that's where they chose to define their coverage obligation to us. We didn't choose that. That was their decision and so it couldn't have been more relevant. As to the ambiguity instruction, our position has always been that only the court under Tennessee law can instruct the jury as to findings of law. The finding of ambiguity was made by the district court. We don't agree with it. We don't believe the contract was ambiguous and if it was, it certainly could have been interpreted under the Tennessee case law. But the court found that and had to tell the jury that the contract had been found ambiguous. Otherwise the jury doesn't know what issue it's trying to interpret. And it's left to do nothing but look at the contract itself on the face and decide is there an agreement to pay $750? Well, no, there's not an agreement to pay any number. You have to look to the ACE policy for that definition. And so we believe the court erred as a matter of law on that as well. All right, thanks very much. We appreciate your briefs and oral arguments and as always are grateful for answering our questions.